IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------ x
In re:                                                 :   Chapter 11
                                                       :
BLUE TULIP CORPORATION                                 :   Case No. 09-10015 (KG)
a Delaware corporation,                                :
                                                       :   Hearing Date: January 13, 2009 at 1:00 p.m. (ET)
         Debtor.¹                                      :              (REQUESTED)
                                                       :   Objections Due at the Hearing
------------------------------------------------------ x
```

### DEBTOR'S MOTION (I) TO APPROVE PROCEDURE FOR ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY; (II) TO AUTHORIZE THE DEBTOR TO ENTER INTO TERM SHEET WITH SWOOZIE'S, INC (A) GRANTING OPTION TO DESIGNATE CERTAIN STORES FOR ASSUMPTION AND ASSIGNMENT, AND (B) SELLING OWNED FURNITURE, FIXTURES AND EQUIPMENT LOCATED IN EACH DESIGNATED STORE; AND (III) GRANTING RELATED RELIEF

Blue Tulip Corporation, the debtor and debtor-in-possession in the above-captioned case (the "Debtor") hereby files this motion (the "Motion") for entry of an order, pursuant to sections 105(a), 363, and 365 of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 6003, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving expedited procedures for the assumption and assignment of certain of the Debtor's Retail Leases (as defined herein); (ii) authorizing the Debtor to enter into the term sheet (the "Term Sheet") by and between the Debtor and Swoozie's Inc. ("Swoozie's"), attached hereto as <u>Exhibit A</u>, which (a) grants Swoozie's the option to elect the assumption and assignment of any and all of the Retail Leases set forth on the attached <u>Exhibit B</u>, and (b) approves the sale of the owned fixtures, furniture and equipment (collectively, the "FF&E") located at the premises that are the subject of each of the leases on

---

[1] The last four digits of the Debtor's tax identification number are (1905) and its headquarters are located at 401 Bordentown Hedding Road, Bordentown, New Jersey 08505.

1

Exhibit B for which Swoozie's elects to purchase by January 16, 2009; and (iii) granting related relief. In support of this Motion the Debtor respectfully represents as follows

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 363 and 365 of the Bankruptcy Code as well as Bankruptcy Rules 6003, 6004 and 6006.

## BACKGROUND

*General Background*

2. On January 5, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or official committee of unsecured creditors has been appointed in this case.

*Company Background*

4. The Debtor is a retailer of gifts and entertainment products, including personalized items, for all personal and holiday occasions operating under the label of Blue Tulip. The concept of Blue Tulip stores was to solve the diverse occasion, invitation, entertaining and gift-giving needs of its customers. Prior to the Petition Date, the Debtor was headquartered in New York, New York, maintained a corporate office and distribution center in Bordentown, New Jersey and conducted business from 24 stores located in New Jersey (9 stores), Connecticut (5 stores), Massachusetts (3 stores), Pennsylvania (3 stores), New York (2

stores), and Virginia (2 stores). The stores are primarily located in daily use shopping centers and average approximately 4,131 square feet in size. In addition to its retail stores, the Debtor operated a website at: www.bluetulip.com.

5. The economic downturn has severely impacted the present performance of the Debtor and, in turn, its ability to satisfy its debt obligations. Sales and margins declined at an accelerating rate in 2008 and have put the Debtor in a negative financial position. As of the Petition Date, the obligation of the Debtor to its secured lenders was approximately $3,451,619.18, including accrued interest. Consequently, the Debtor has determined that the most prudent course of action is to conduct an orderly wind-down of its operations through the present chapter 11 case.

*The Debtor's Leases and Contracts*

6. As set forth above, the Debtor conducts its retail operations at twenty-four retail store locations (collectively, the "Retail Stores") each of which is subject to a real property lease (each a "Retail Lease"). Each of the Retail Stores contains FF&E used in the ordinary course of the Debtor's business, primarily to facilitate the sale of its merchandise. In addition to the Retail Leases, the debtor maintained its corporate headquarters in New York City (the "Headquarters"), which is the subject of the Headquarters Lease, and has a lease (the "DC Lease") for a distribution center with attached corporate offices (collectively, the "Distribution Center") in Bordentown, New Jersey. Prior to the Petition Date, the Debtor ceased operations at its headquarters, vacated the premises and no longer has any use or need for the Headquarters. Additionally, prior to the Petition Date, the Debtor ceased the purchase of inventory and distributed all of the merchandise inventory located in the Distribution Center to the Retail Stores; however, the Debtor still maintains a corporate office in the Distribution Center.

*The Swoozie's Negotiations and the Store Closing Sales*

7. Prior to the Petition Date, the Debtor contacted several parties, including Swoozie's, to solicit interest in consummating a financial or strategic sale of some or all of its Retail Stores on a going concern basis. The Debtor determined that, if it was unable to consummate a going concern sale by the beginning of January 2009, it would be in the best interest of the Debtor's estate and its creditors to seek chapter 11 protection and immediately commence the liquidation of its assets primarily through the conduct of store closing sales (the "Store Closing Sales").

8. In connection with the anticipated Store Closing Sales, the Debtor retained Hilco Merchant Resources, LLC ("Hilco") as its consultant. In addition to its own analysis of the Retail Leases, the Debtor asked Hilco to determine whether any value could be realized through the "sale" of the Retail Lease. Ultimately, the Debtor and Hilco concluded that the costs of marketing and approving the assignment of the Retail Leases would likely only provide the estate with a *de minimis* net value.

9. Without a going concern sale as of the Petition Date, the Debtor commenced these proceedings, and filed a motion [Docket No. 15] (the "GOB Motion") to approve the Store Closing Sales, including the approval of the conduct of the Store Closing Sales pursuant to the Sale Guidelines (as defined in the GOB Motion). However, the Debtor continued its pre-petition discussions with Swoozie's and agreed in principle to the transaction proposed by Swoozie's and embodied in the Term Sheet. The transaction propose in the Term Sheet allows the Debtor to obtain value from certain Retail Leases and related FF&E and also has potential to reduce administrative costs to the estate.

10. The pertinent provisions of the Term Sheet are as follows:[2]

a. Assets: (i) Swoozie's shall have the option to elect to take assumption and assignment of each of the Retail Leases set forth on Exhibit B.
(ii) Swoozie's shall have the option to purchase the Store Fixtures located at each of the Retail Stores set forth on Exhibit B.
(iii) Swoozie's, at its election, may negotiate for the purchase of Additional Assets, on terms to be negotiated by the parties.

b. Purchase Price.

i. *Store Leases*: (i) A non-refundable payment of $40,000 (the "Store Payment"), plus (ii) for each Lease which Swoozie's elects to take assignment and which is actually assigned, a payment equal to all unpaid amounts due under the Lease, including, but not limited to, any rent accruing but unpaid for the period ending January 31, 2009, required as a cure payment pursuant to 11 U.S.C. § 365.

ii. *Designated Store Fixtures*: $22,500 per Store.

iii. *Additional Assets*: As agreed on a case by case basis among Swoozie's, Blue Tulip and Hilco. For avoidance of doubt, Swoozie's does not have any exclusive option with respect to the Additional Assets.

iv. *Non-Refundable Payment*: Within one business day of the filing of the Motion (as hereinafter defined), Swoozie's shall pay to the Debtor the $40,000 Store Payment, plus a non-refundable payment on account of the Store Fixtures in each of the Stores in the amount of $160,000 (the "FF&E Deposit"). The FF&E Deposit shall be applied solely against the purchase price for any Store Fixtures actually purchased by Swoozie's, and not against any Additional Assets which Swoozie's elects to purchase, cure amounts or any other amounts payable by Swoozie's in connection with this transaction. Any portion of the FF&E Deposit not applied to the purchase price of Store Fixtures shall be forfeited by Swoozie's and retained by the Debtor. For avoidance of doubt, the FF&E Deposit shall not be applied against the purchase of only a portion of the Store Fixtures and may only be applied against the purchase of all Store Fixtures in a given Store (i.e. Swoozie's is not permitted to cherry pick the best Store Fixtures and then apply the FF&E Deposit).

c. Option to Purchase. The sale, assignment and assumption of the Leases will be structured as an option for Swoozie's to assume the Lease for any or all of the

---

[2] The following summary of the Term Sheet is provided for the convenience of the Court and parties-in-interest. All parties are encouraged to independently review the provisions of the term sheet, and the Term Sheet shall control in the event of any inconsistency between what is set forth herein and the actual provisions of the Term Sheet. Capitalized terms used in this summary shall have the meaning ascribed to such term in the Term Sheet.

5

DB02:7709291.1                                                                                                           067961.1001

Stores, as determined by Swoozie's in its sole discretion; <u>provided</u>, that any assignment and assumption shall be completed no later than January 31, 2009, subject to other provision of the Term Sheet (the "<u>Exclusive Option</u>").

Swoozie's shall be required to designate and commit to assume/acquire (or elect not to assume/acquire) each of the Designated Stores and Store Fixtures by no later than the Option Termination Date. For any Store for which Swoozie's desires to extend the option to acquire the Store Fixtures after January 16, 2009, Swoozie's shall be required to indefeasibly pay to the Debtor, by 4:00 p.m. (ET) on January 17, 2009, the balance of the purchase price ($10,192) for the Store Fixtures (for each Designated Store, the Debtor shall apply $12,308 from the FF&E Deposit to satisfy in full the remaining purchase price for the Store Fixtures located therein) at each Designated Store.

d. <u>Option Termination</u>. The Exclusive Option shall expire at 11:59 p.m. (ET) on January 16, 2009.

e. <u>Contested Assignment</u>. In the event that Swoozie's elects to cause the Debtor to assume and assign to Swoozie's any Lease over the objection of the applicable landlord, Swoozie's shall be responsible for all costs and expenses incurred by the Debtor in pursuing such Contested Assignment, including without limitation the fees and expenses of counsel in connection with the Contested Assignment and the hearing thereon, and Swoozie's shall deliver to the Debtor a refundable deposit in the amount of $10,000 for each such contested Lease assignment, to be credited against any such costs and expenses.

In the event that parties shall be unable to accomplish the assignment and assumption of any applicable Lease by January 31, 2009, the Debtor shall have the right to reject such Lease as of such date <u>unless</u> Swoozie's provides an additional non-refundable payment to the Debtor in an amount equal to all base rent, CAM and other charges payable under such Lease for the month of February 2009.

For avoidance of doubt, Swoozie's agrees to fully indemnify and hold the Debtor harmless from any and all costs and expenses incurred by the Debtor's estate in connection with any Contested Assignment whether or not the assumption and/or assignment of such Lease is approved.

If any payments required to be made under the terms hereof are not timely made, the Debtor's obligations under the Term Sheet shall immediately expire and the Debtor's rights to pursue any damages claims or specific performance against Swoozie's shall be preserved.

f. <u>Bankruptcy Court Approval</u>. The transaction contemplated by the Term Sheet is subject to approval of this Court.

## RELIEF REQUESTED

11. By this Motion, the Debtor seeks (i) authorization of the expedited lease assumption procedures set forth herein; (ii) approval of the Term Sheet, including the grant of the Exclusive Option, the potential assumption and assignment of the Retail Leases for the Designated Store (as defined in the Term Sheet) and the potential sale of the related FF&E, pursuant to the below procedures; and (iii) any such other relief required to effectuate the foregoing.

12. In order to expedite the lease assumptions and assignments contemplated by the Term Sheet, the Debtor requests that the Court approve the following procedures (the "Assignment Procedures"):

   a. Minimum Consideration: All liabilities and obligations under any Lease to be assumed and assigned pursuant to these Assumption Procedures shall be fully released against the Debtor, its officers, directors and agents pursuant to the Purchaser's satisfaction and/or assumption of such obligations or through a release by the landlord to such Lease. The landlord's sole recourse in connection with such Lease, after such Lease is assumed and assigned, shall be against Purchaser; provided, that the foregoing consideration shall only be provided in the event that an order is entered approving assumption and assignment of the applicable Lease.

   b. Assignment with Consent: If the landlord under any Lease consents to the assumption and assignment of its lease to Purchaser, including that Purchaser has provided adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code, the Debtor shall submit an order, substantially in the form annexed to the Order as Exhibit 4, under certification of counsel which shall be approved without the need for further notice or hearing.

   c. Contested Assignments. If the landlord under any Lease does not consent to the assumption and assignment of its Lease to Purchaser, and Purchaser elects to seek the assumption and assignment of such lease on a contested basis (each a "Contested Assignment"), then the foregoing shall apply:

      i. On or before January 17, 2009, the Debtor shall file, and serve by overnight mail upon the applicable landlord(s), a notice of proposed cure amount for each lease that is the subject of a Contested Assignment.

ii. For avoidance of doubt, Purchaser agrees to fully indemnify and hold the Debtor harmless from any and all costs and expenses incurred by the Debtor's estate in connection with any Contested Assignment whether or not the assumption and/or assignment of such Lease is approved. Purchaser will provide the Debtor with a $10,000 in the event that Purchaser elects to proceed with any Contested Assignment.

iii. A hearing shall be held on the Contested Assignment(s) on January 30, 2009 at 4:00 p.m. (ET).

13. Finally, should the Court grant the relief requested herein, the Debtor requests that the Court waive the stay provided by Bankruptcy Rule 6004(h) and 6006(d) with respect to that the Procedures Order, as well as any orders entered in accordance therewith.

## BASIS FOR THE RELIEF REQUESTED[3]

A. Approval of the Sale and Assumption and Assignment

14. Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

15. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1) (2006). Although section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan, courts in this Circuit and others, in applying this section, have required that the decision to sell assets outside the ordinary course of business be based upon the debtor's sound business judgment and a finding of "good faith." *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149-50

---

[3] By this Motion, the Debtors is requesting approval of the sale of the FF&E, including that such sale be free and clear of all liens, claims and encumbrances pursuant to section 363(f), which relief is also the subject of the GOB Motion. In support of this request, the Debtor incorporate by reference herein, the GOB Motion, and all citations to authority and arguments contained therein.

8

(3d Cir. 1986) (requiring a finding of "good faith" to approve a sale under section 363(b)); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions."); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (examining the history of the standard required for a pre-confirmation sale of assets under section 363(b) and opining that the Third Circuit has implicitly abandoned the "emergency" test under earlier precedent and has adopted the "sound business judgment" test as utilized by other courts).

16. Additionally, section 365(a) of the Bankruptcy Code authorizes a debtor in possession to assume an unexpired lease subject to the bankruptcy court's approval. 11 U.S.C. § 365(a). Section 365(b) of the Bankruptcy Code requires a debtor in possession to satisfy certain requirements at the time of assumption if a default exists under the subject contract, lease or agreement to be assumed. 11 U.S.C. § 365(b) (requiring the curing of any defaults and provision of adequate assurance as a condition to assumption of an unexpired lease). Where a debtor is seeking to assume and assign the lease, section 365(f) of the Bankruptcy Code requires the debtor to "assume" the lease in accordance with section 365 and requires the assignee of the lease to provide adequate assurance of future performance. 11 U.S.C. § 365(f)(2).

17. In this circuit, courts apply the business judgment rule to determine whether a debtor's decision to assume an executory contract or unexpired lease should be approved. *See, e.g., Sharon Steel Corp. v. National Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing the business judgment test as the "traditional" test); *In re III Enterprises, Inc. V*, 163

B.R. 453, 469 (Bankr. E.D. Pa. 1994) (citations omitted) ("Generally, a court will give great deference to a debtor's decision to assume or reject the contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment – a standard which we have concluded many times is not difficult to meet."). So long as assumption of the contract or lease is an exercise of the debtor's sound business judgment and the debtor otherwise satisfies the requirements of section 365(b), the assumption should be approved. *See In re Sharon Steel Corp.*, 872 F.2d at 40.

18.  Additionally, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the [debtor] to assign an . . . unexpired lease under [section] 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d); *see also* Fed. R. Bankr. P. 6004(g) ("An order authorizing the use, sale or lease of property . . . is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise.").

19.  The Debtor believes that the approval of the Exclusive Option, as well as the assumption and assignment of the Retail Leases and the sale of the FF&E pursuant to the Assignment Procedures, is a sound exercise of its business judgment. The Term Sheet is the result of extensive negotiations between the Debtor and Swoozie's that commenced prior to the Petition Date and continued post-petition. The Debtor submits that the Term Sheet represents a fair and reasonable offer for the Retail Leases and the associated FF&E (subject to the provisions of the Term Sheet) and, if approved, will provide the estate the opportunity to maximize value for those assets. Moreover, the Debtor submits that the parties were represented by counsel and have negotiated the Term Sheet in good faith. Accordingly, the Debtor proposes that the potential assumption and assignment of the Retail Leases and sale of related FF&E, at the

10

election of Swoozie's and on the conditions and terms of the Term Sheet, is in the best interest f the estate and its creditors.

20. The Debtor sees the transaction set forth in the Term Sheet as an opportunity to provide the estate with significant value and reduce potential claims against the Debtor, at minimal risk to the estate. Under the proposed transaction, the Debtor is providing Swoozie's with approximately one week in which Swoozie's may exclusively negotiate with the Debtor's landlords for the assumption and assignment of certain Retail Leases and to allow Swoozie's the exclusive option to purchase the FF&E therein. In exchange for these options, Swoozie's is providing the estate with an aggregate payment of $200,000, a portion of which will be applied against any purchase of the FF&E. Should Swoozie's elect to assume any of the Retail Leases, as a condition of such assumption, Swoozie's will assume any cure costs and future obligations related to those assumed leases—thus eliminating any further estate obligations or potential claims arising from those leases. Additionally, Swoozie's has agreed to purchase the FF&E for each of the Retail Leases for which it takes assignment, thereby providing the Debtor with a guaranteed sale of certain FF&E at a value consistent with or exceeding the projected recovery for those assets. Finally, to the extent that Swoozie's determines not to acquire any of the Retail Stores and the associated FF&E, the Debtor will have received a non-refundable payment of approximately $12,000 for the FF&E therein and the opportunity to further market such FF&E and Retail Leases.

B. <u>Approval of the Assignment Procedures</u>

21. The Debtor submits that the proposed Assignment Procedures are appropriate and provide parties-in-interest adequate opportunity to respond to the relief requested herein. Generally, Bankruptcy Rule 2002(a)(2) requires that a minimum of twenty days' notice

of proposed sales of property outside the ordinary course of business be provided and Rule 9006-1(c) of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "Local Rules") requires a minimum of fifteen days notice for, among other things, a motion to assume and assign an unexpired lease of non-residential real property. However, shorter notice may be appropriate given the circumstances. *See* Fed. R. Bankr. P. 2002(a)(2); Del. Bankr. L.R. 9006-1(e) (authorizing shortened notice "by order of the court").

22. Under the Assignment Procedures, the Debtor is providing notice to the landlords listed on Exhibit A hereto that they may seek to potentially seek to assume and assign their respective leases to Swoozie's. Further, the Debtor anticipates that Swoozie's will be actively engaging each landlord to discuss the terms of the proposed assumption and assignment, including the determination of the applicable cure amount and any issues related to adequate assurance of future performance. Accordingly, the Debtor's landlords will have sufficient notice of the potential assumption and assignment of their lease.

23. The Debtor anticipates that a number of the landlords will agree to a consensual assumption and assignment of their lease with the Debtor to Swoozie's, provided that the Debtor receives the minimum compensation set forth above. For these parties, if the Court determines that the proposed consideration is adequate, the Debtor believes that no party will be prejudiced by such assumption and assignment on shortened notice. Therefore, the Debtors submits it is appropriate to approve the assumption and assignment of theses leases by order submitted under certification of counsel and without further notice and a hearing.

24. For those landlords that do not consent to the assumption and assignment of their lease with the Debtor to Swoozie's, the Debtor proposes that a hearing be held on January 30, 2009 on such Contested Assignment. These parties will have had approximately

twenty days notice of the assumption and assignment of their lease and will have an opportunity for a hearing on such Contested Assignment. Moreover, to the extent required, the Debtor anticipates that Swoozie's will demonstrate adequate assurance of future performance under section 365(f) of the Bankruptcy Code at the hearing.

C.  Approval of the Sale Free and Clear of All Liens

25. The Debtor requests approval to sell the FF&E on a final "as is" basis, free and clear of any and all liens, claims and encumbrances (collectively, the "Liens") in accordance with section 363(f) of the Bankruptcy Code with any Liens in such Assets attaching to the proceeds in the order or priority and with the same force, validity and effect they had with respect to the Assets prior to the sale. A debtor in possession may sell property under sections 363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

1)  applicable non-bankruptcy law permits sale of such property free and clear of such interest;

2)  such entity consents;

3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4)  such interest is in bona fide dispute; or

5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); Citicorp. Homeowners Servs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that since section 363(f) is written in the disjunctive, the court may approve a sale free and clear if any one subsection is met).

26. The Debtor believes that the sale of the Assets pursuant to the terms of the Sale Guidelines will satisfy one or more of the section 363(f) requirements. The Debtor's

13

Lenders have consented to the Store Closing Sales and the sale of the Assets. Thus, the sale of the Assets, with respect to the Lenders' collateral is authorized pursuant to section 363(f)(2) of the Bankruptcy Code. Second, as the obligations to the Debtor's Lenders, or any other person which may assert a lien on or claim against the property being sold, can be satisfied by the payment of money, the Assets can be sold free and clear pursuant to section 363(f)(5) of the Bankruptcy Code.

### REQUEST FOR WAIVER OF STAY

27. The Debtor requests a waiver of any stay of the effectiveness of any order approving any of the relief requested in this Motion. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Given the harm to the estate if the Debtor cannot conduct the transaction proposed under the Term Sheet immediately upon approval of any lease assumption, including incurring additional administrative obligations under the Retail Leases, the Debtor believes it is in its best interest that all orders issued in connection with this Motion be granted immediate effect. Accordingly, the Debtor requests a waiver of the ten-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d), to the extent that they apply.

### SATISFACTION OF BANKRUPTCY RULE 6003

28. Pursuant to Bankruptcy Rule 6003, the Court may grant a request of a debtor to pay all or part of a pre-petition claim in the first 20 days of a case only if that relief is necessary to avoid immediate and irreparable harm. For the reasons set forth above, the ability to commence the transactions contemplated by the Term Sheet immediately is necessary to avoid the prejudice and delay to Swoozie's and the estate, including the uncertainty as to whether the subject leases will be assumed and assigned prior to February 1, 2009, if the Retail Leases are not assigned as soon as practicable. Accordingly, the Debtor submits that, to the extent relief is

being requested in the first 20 days of this case, it has satisfied the requirements of Bankruptcy Rule 6003 with respect to the relief requested herein.

## NOTICE

29. Notice of this Motion is being provided by overnight mail or hand-delivery to: (i) the Office of the United States Trustee; (ii) the Debtor's twenty (20) largest unsecured creditors on a consolidated basis; (iii) counsel to the Debtor's prepetition secured lenders; (v) each of the Debtor's landlords; and (vi) all entities requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

WHEREFORE, the Debtor respectfully requests entry of the Procedures Order, in substantially the form annexed hereto as Exhibit A; and (ii) such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       January 8, 2009

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Ryan M. Bartley
James L. Patton, Jr.(No. 2202)
Sean M. Beach (No. 4070)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Proposed Counsel for the Debtor and
Debtor-in-Possession